CASE 87—PETITIONS EQUITY—FEBRUARY 23.

# Curran v. City of Louisville.
# Dugan v. Same.
# McDonough v. Same. ·

APPEALS FROM LOUISVILLE CHANCERY COURT.

1. MERE NON-USER OF AN EASEMENT which has been acquired by grant or its equivalent will not defeat the right to the use. To do so, there must be an adverse use by the servient estate for a period sufficient to create a prescriptive right.

2. EMINENT DOMAIN — ABANDONMENT OF RIGHT ACQUIRED. — To show an abandonment of the right acquired by the condemnation of property for a public use, the acts relied on must be of a conclusive character and clearly established by the evidence.

The property of appellants was condemned in 1867 in favor of appellee for the building of a city or canal basin, and a wharf in connection with it. Appellants brought this action in 1879 to recover the possession of the property, upon the ground that the right acquired by the city had been lost by non-use and abandonment. Three or four years prior to the bringing of these suits the city leased free of rent for ten years a small portion of the property, and the remainder has been used by the city as a "dumping ground." When these suits were brought negotiations were pending for a lease of the property for a term of years to a railroad transportation company.

*Held*—That the character and duration of the non-user create no presumption of abandonment. The reason for it is shown by the city's inability to hitherto construct the work, and it does not appear that the city has done any act, permanent in character, which is even likely to interfere with the future enjoyment of the use intended.

3. In the exercise of the right of eminent domain real estate may be taken for one public use, and thereafter, by legislative consent, be applied to another of a kindred kind without working a reversion to the original proprietor.

TEMPLE BODLEY and F. W. MORANCY for appellants.

1. The charter of a municipal corporation must be strictly construed. Its terms can not be extended by intendment. It can confer no powers other than those expressly granted. The charter of Louisville of 1865 does not give the city the power to condemn private property for the purpose of making a canal basin. Hence the condemnation proceedings were void. (Johnston v. Louisville, 11 Bush, 533; Cooley's Const. Lim., 530, 594; Elliott's Charter and Ordinances of Louisville, pages 146, 147; Hays v. Briggs, 74 Pa. St., 373; 55 Pa. St., 25.)

2. Under the condemnation proceedings the city took only an easement in the land condemned, the fee remaining in the original owners. (Eggleston v. Haff, 26 Ind., 38, 39; Washington Co. v. Prospect Park R. R. Co., 68 N. Y., 591; In re Amsterdam Water Commissioners, 96 N. Y., 351; West Cov. v. Freking, 8 Bush, 123; 16 N. Y., 97; article 7, section 1, Charter of Louisville; section 10 of an act to amend the charter of Louisville, approved June 2, 1865; Green's Brice's Ultra Vires, page 100 and note; Barclay v. Howell's Lessee, 6 Pet., 498; Jackson v. Rut. & Bur. R. R. Co., 25 Vt., 151; ' Jackson v. Hathaway, 15 Johns., 447; Adams v. Rivers, 11 Barb., 390; Hooker v. T. P. Co., 12 Wend., 371; People v. White, 11 Barb., 26; Heard v. City of Brooklyn, 60 N. Y., 242; Dean v. Sullivan R. R. Co., 22 N. H., 282; Quimby v. Ver. C. R. R. Co., 23 Vt., 387; Weston v. Foster, 7 Met., 297; Henry v. Dubuque & Cal. R. R. Co., 2 Iowa, 288; Geisy v. R. R. Co., 4 Ohio St., 308; 41 Ind., 364.)

3. This easement was lost by non-user or abandonment. ' (123 Mass., 155; American Law Reg. (N. S.), vol. 2, page 513; 2 Washb. Real Prop., page 370; Parkins v. Denham, 3 Strob. (S. C.), 224; Steiner v. Tiffany, 13 R. I., 568.)

4. An easement in land condemned and taken for public use, is lost by being diverted from its original purpose. (Imlay v. Union Branch R. R. Co., 26 Conn., 255; 21 Mo., 582; 48 Mo., 368; 22 Iowa, 357; Malone v. City of Toledo, 28 Ohio St., 643; Chase v. Sutton, 4 Cush., 167.)

W. O. HARRIS for appellee.

1. Mere non-user does not operate as a forfeiture of an easement. To produce this effect, there must be an adverse use by the servient estate for such a period as would create a prescriptive right. (D. & N. R. R. v. Covington, 2 Bush, 526; Rowan v. Portland, 8 B. Mon.,

·630 . KENTUCKY ·REPORTS. [VOL. 83.

Curran v. City of Louisville. Dugan .v. Same. ·McDonough v. Same.

250; Boone·Law of Real Prop., sec. .147; Arnold v. Stephens, 24 Pick., 106; Chandler v. Jamaica, 125 Mass., 544.)

2. In order to show an abandonment, acts must be shown of such a conclusive character as to indicate clearly an· intention to·abandon. (Dyer v. Sanford, 9 Metc., 395; Hayford v. Spokesfield, 100 Mass., 491.)

3. A mere change of the purpose for which the easement was acquired, will not constitute an abandonment. (Boone Real Prop., sec. 147; Mendel v. Delano, 7 ·Metc., 176; Proprietors v. R. R. Co., 104 Mass., 1; Hatch v. R. R. Co., 18 Ohio St., 92; Malone ᵛv. Toledo, 28 Ohio St., 643; Chase v. Sutton, 4 Cush., 167.)

4. Leasing premises subject· to an easement does not operate as a forfeiture. If the city had no right to make the leases, they are void ·and of no effect. (Belcher v. St. Louis, 5 Arm. & Eng. Corporation Cases, 417; Illinois, &c., v. St. Louis, 2 Dillon, 82.)

.JUDGE·HOLT DELIVERED THE OPINION OF THE COURT.

The lots of the appellants, Dugan, Curran, and McDonough, together with those of other owners in the city of Louisville, were, under a writ of *ad quod damnum* in favor of the city, duly condemned in 1867 for the building of a· city or canal basin, and ·a wharf in connection with it, adjoining the Ohio river.

These actions were brought in 1879 by the appellants, who seek to recover the possession of their lots so condemned, and· the assessed value of which they received from the city, upon the ground that the right or perpetual easement acquired by the city thereby has been lost by·non-user and abandonment.

The city has been in possession of the lots ever since the condemnation; but, owing to its financial condition, has been unable to buy the additional .adjoining land necessary for the designed . purpose, and build what will be a costly public work. It has been proposed by its authorities to do so several

times since the condemnation, but found to be impossible for the reason stated.

Three or four years prior to the bringing of these suits it leased, free of rent for ten years, a small portion of the property to a glass company for temporary purposes; and it has erected temporary frame buildings upon it.

The remainder of the property has been used by the city as a "dumping ground."

When these suits were brought negotiations were pending, but not concluded, between the city and a railroad transportation company for a lease of the property to it for a term of years.

The city had also given a transfer railroad company, by an ordinance fixing the terminal points, the right to cross its wharves and public ways between those points; and it is surmised and probable that it may cross this property at some point, as it will probably be the least expensive route. This, however, is a mere conjecture.

These facts, together with the failure of the city to take any step to devote the property to the use for which it was obtained, are relied upon by the appellants for a recovery of it.

The appellee holds the property by what is equivalent to an express grant without any limitation within which the right granted must be exercised.

It has had the exclusive control of it since the condemnation. No third party has acquired any interest, and no innocent person can be injured. There has been no adverse use, and conceding that the right of the city in the property is but a per-

632 KENTUCKY REPORTS. [Vol. 83.

Curran v. City of Louisville. Dugan v. Same. McDonough v. Same.

petual easement, yet there has been no interference· with it by the servient estate.

The language of some cases seems to imply that the mere non-user of an easement, which has been acquired by prescription or adverse use, for a sufficient length of time, is of itself an abandonment; but more correctly, it is nothing more than evidence of an intention to abandon the right. In this case, however, the non-user for the designed purpose only extends over a period of twelve years.

Where, however, an easement has been acquired by grant or its equivalent, no length of mere non-user will defeat the right. To do so there must be an adverse use by the servient estate for a period sufficient to create a prescriptive right. (Washburne's Servitudes and Easements, page 640; Rowan v. Portland, 8 B. M., 250; Chandler v. Jamaica Pond Aqueduct, 125 Mass., 545.)

The right to the *use* in such a case is not extinguished by mere *disuse*. There must be something more than this. There must be some act upon the part of the owner of the land or the servient estate inconsistent with the existence of the easement or dominant estate.

The question next arises whether the acts of the city show an abandonment of the right it acquired by the condemnation. To have this effect they must be of a conclusive character, and clearly established by the evidence. They must show an *intention* to abandon the intended use.

It is well settled that in the exercise of the right of eminent domain real estate may be taken for one·

public use, and thereafter by legislative consent be applied to another of a kindred kind without working a reversion to the original proprietor. Thus a canal may be converted into a railroad, or a street used for the latter purpose; water-pipes may be laid along a street, sewers constructed, and it applied to many public uses for the public convenience and health without working a reversion to the former owner, or entitling him to additional compensation.

But this case does not require us to determine whether the city government of Louisville had the right to change the use of the property in contest from a canal basin to other public uses, or whether this would have been in law an abandonment; nor is it necessary to determine whether the abuse of a prescriptive right destroys it, because, in our opinion, the testimony in the record fails to show such acts upon the part of the appellee as would raise these questions. The appellee has constantly held possession, looking to the end originally contemplated. No acts upon its part are disclosed by the evidence which disable it from using the property in the future for the use for which it was condemned. Those of which the appellants complain manifest the city's intention to hold the possession against the appellants instead of showing an intention to abandon the right. It does not appear that it has done any act, permanent in character, which will, or is ever likely to, interfere with the future enjoyment of the use intended.

If it had attempted to convey in fee-simple the

'property or a part of it when it had but an ease-ment, this would have clearly shown an intention to abandon its right, because it involved a cessa-tion of all public uses.

Even a grant by it to the transfer company of the privilege to cross the intended wharf would not necessarily affect the right, because such a use would probably not interfere with the intended use by the city.

The character and duration of the non-user create no presumption of abandonment. The reason for it is shown by the city's financial inability to hitherto construct the work. Upon the contrary, it clearly appears that the appellee has had no purpose of permanently abandoning the intended use, and the judgment below is affirmed.