[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISIONS
The plaintiff appealed from the summary judgment rendered in favor of the defendants in this action to quiet title. The plaintiff claimed on appeal that the court improperly granted the defendants' motion for summary judgment on the basis of its holding that the plaintiffs right-of-way over the defendants' land had been extinguished by a 1989 quitclaim deed and, further, that the court improperly denied the plaintiffs request for an injunction to prevent the defendants from interfering with the plaintiffs use of that right-of-way. The Appellate Court reversed the decision of the trial court (Mulla v. Mcguire,65 Conn. App. 525 (2001). The Appellate Court remanded the matter to this court with "direction to deny the defendants' motion for summary judgment, to grant the plaintiffs motion for summary judgment in that the 1989 deed did not extinguish the right-of-way and for further proceedings to address the parties' remaining claims." The remaining claims are 1) whether the right-of-way had been extinguished by nonuse and 2) whether the right-of-way was limited to the purpose of quarrying.
The plaintiff argues that he is entitled to summary judgment because: 1) he holds record title to the right-of-way, conveyed by warranty deed to him; 2) nonuse of an easement created by deed, however long continued, does not create an abandonment of the easement and does not extinguish the easement; and 3) the terminology used in the reservation of the right-of-way does not limit the use to quarrying purposes.
The parties have submitted supplemental memoranda of law on the issues of nonuse of the right-of-way and limit on the use of the right-of-way to quarrying purposes.
The following facts are not in dispute. The defendants own property in Warren, Connecticut (the Maguire property), located on the westerly and easterly side of Melius Road. The plaintiff owns property on the easterly side of Melius Road (the Mulla property). On October 26, 1942, Richard A. Morgan, as executor of the will of Emily M. Morgan, conveyed the Maguire property to James P. Maguire, Sr. and Huldah Johnson Maguire, parents of the defendant, James P. Maguire, Jr., by an executor's deed containing the clause, "[r]eserving to the grantor, his heirs and successors and assigns, right of way across second piece from road to quarry located Easterly of said piece." (Defendants' Exhibit 1; Plaintiff's Exhibit 4).
On May 12, 1944, Richard Morgan conveyed the Mulla property to Robert CT Page 8648 J. Cashion and Edna K. Cashion, by executor's deed, together with "right of way to quarry over land of Maguire, affecting Second Piece." (Defendants' Exhibit 2; Plaintiff's Exhibit 1). On December 26, 1959, the Cashions conveyed that property to their corporation, Windy Ridge, Inc., "together with right of way to quarry over land of said Maguire. . . ." (Defendants' Exhibit 2; Plaintiff's Exhibit 1).
On September 11, 1970, Huldah Johnson Maguire conveyed the Maguire property to the defendant James P. Maguire, Jr. by a quitclaim deed. (Defendants' Exhibit 4; Plaintiff's Exhibit 5.) On July 31, 1974, the defendant, James Maguire, Jr., conveyed the Maguire property to himself and the defendant, Catherine Maguire, in joint tenancy, by a quitclaim deed. (Defendants' Exhibit 5; Plaintiff's Exhibit 6.) On August 28, 1986, the defendants quitclaimed the Maguire property to themselves as trustees to be held in trust for their children. (Defendants' Exhibit 6 
7; Plaintiff's Exhibit 7 8.)
In 1988, Robert Cashion had a survey done of the Mulla property. The survey revealed questions concerning the boundaries of neighboring properties, including the Maguire property. James P. Maguire indicated that he would agree with the boundary lines as indicated on the survey map. A quitclaim drafted by Cashion was executed on July 26, 1989, and stated that, "[t]he intention of this deed is to establish the above referenced lines as the boundary line between the Grantor's and Grantee's property." (Defendants' Exhibit 9; Plaintiff's Exhibit 10). The July 1989 deed made no mention of a reservation of the right-of-way across the Maguire property. On August 10, 1989, the defendants executed a quitclaim deed to Windy Ridge for the 230.919 acres shown on the Adams survey. (Defendants' Exhibit 10; Plaintiff's Exhibit 11). This deed made no mention of a right-of-way across the Maguire property.
On June 14, 1995, the plaintiff executed an offer to purchase the Mulla property and a real estate contract of sale. The contract described the property as a vacant land of 230.919 acres and made no mention of the now disputed right of way. After the contract was executed, the plaintiffs attorney requested that the deed be revised to include the right-of-way as contained in the 1942 deed from Morgan to Maguire. On July 10, 1995, a warranty deed was executed conveying the Mulla property to the plaintiff. This deed contained the clause, "[t]ogether with an Easement recorded in Volume 23 page 15 of the Warren Land Records . . ."
In 1993, the defendants' son, John Maguire. built a house and driveway on the Maguire property. The driveway was constructed over a portion of the alleged right-of-way. During 1996, the defendant, James P. Maguire, Jr., noticed that the plaintiff was using his son's driveway to cross the Maguire property. After asking the plaintiff what he was doing, the CT Page 8649 defendant learned that the plaintiff was attempting to use what he believed to be his right of way. Subsequently, the way was blocked by the defendants' son with boulders, a telephone pole, and a car. The plaintiff commenced this action seeking damages and an injunction restraining the defendants from interfering with his use of the right of way. The defendants filed a counterclaim, asking for a judgment determining the rights of the parties in the subject property and settling the title thereto.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Alvarez v. New Haven Register,Inc., 249 Conn. 709, 714 (1999). A "material" fact is one which will make a difference in the outcome of the case. Morascini v. Commissioner ofPublic Safety, 236 Conn. 781, 808 (1996). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney,168 Conn. 431, 433 (1975). "[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.) Suarez v. DickmontPlastics Corp., 229 Conn. 99, 111 (1994).
"We recognize that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. . . ." (Citation omitted; internal quotation marks omitted.) Reynolds v. Chrysler FirstCommercial Corp., 40 Conn. App. 725, 731, cert. denied, 237 Conn. 913
(1996). "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." (Internal quotation marks omitted.) Id.
"[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Wadia Enterprises,Inc. v. Hirschfeld, 224 Conn. 240, 250 (1992).
"An easement may be abandoned. The evidence of abandonment generally consists of unequivocal acts inconsistent with the assertion of any further rights under the easement . . . The following factors can be used to indicate the abandonment of an easement.
* * *
• The dominant owner's failure to use the easement over an CT Page 8650 extended time period.
However, nonuse alone is generally insufficient to prove abandonment.
• The dominant owner's failure to maintain the easement.
* * *
 • If the easement was created for a special purpose, abandonment may be indicated if
the purpose for which the easement was established becomes impossible."
Powell on Real Property § P8.07, p. P8-17.
"The Restatement of Property (Restatement of property § 504, comment d.) takes the position that nonuser alone is never sufficient to prove abandonment as to any variety of easement, but constitutes relevantevidence that, with other accompanying facts, can justify a finding of abandonment. . . . [T]he length of nonuser is important only to strengthen the inference of an intention to abandon the easement." (Emphasis added.) Powell supra § 34.20[2], p. 34-190.
"Minor Wurts on Real Property, state the law in § 105, as follows: Prolonged nonuser of an easement, standing alone, does not suffice to show an abandonment, even though the nonuser continues for twenty years or other prescriptive period. In addition to the mere nonuser, there must be either acts on the part of the owner of the dominant tract, showing an intent to abandon permanently the use of the servient tract, or acts of the owner of the servient tract, showing an intent to obstruct the dominant owners enjoyment of the easement." So, also, if the servient owner should by adverse acts lasting through the prescriptive period obstruct the dominant owner's enjoyment, intending to deprive him of the easement, he may by prescription acquire the right to use his own land free from the easement." (Emphasis added.) AmericanBrass Co. v. Serra, 104 Conn. 139, 146 132 A. 565 (1926); Minor Wurts on Real Property, § 108, p. 100.
"Whether there has been an abandonment is a question of intention to bedetermined from all the surrounding circumstances, and is a question offact and not of law. The proof must clearly indicate that it was the intention of the owner of the dominant estate to abandon the easement. Mere nonuser of an easement created by deed, however long continued, is insufficient to establish abandonment. There must also be some conduct on the part of the owner of the servient estate adverse to and inconsistent with the existence of the easement and continuing for the statutory CT Page 8651 period, or the nonuser must be accompanied by unequivocal and decisive acts clearly indicating an intent on the part of the owner of the easement to abandon the use of it." (Emphasis added.) Richardson v.Tumbridge, 111 Conn. 90, 93 149 A. 241 (1930); American Brass Co. v.Serra, supra, 104 Conn. 149.
Here the right-of-way was created by deed. "The reasonable uses of the dominant tenement in connection with which the passway may be used are not limited to those to which the land was being put when the way was granted". Birdsey v. Kosienski, 140 Conn. 403, 413 (1953).
There are issues of fact as to nonuser of the easement and the nature and extent of the right of way.
Accordingly, the plaintiffs motion for summary judgment is denied. The defendants' motion for summary judgment is also denied.
Cremins, J.